Mr. Chief Judge, and may it please the Court, Scott Berkfield on behalf of Attorney General Jeff Landry and Commissioner Juana Marine-Lombard. Appellants asked this Court to reverse the statewide injunction entered below against a rule governing nearly nude conduct in bars. The District Court based its injunction on two facial invalidation claims, both of which are legally flawed. So I intend to address those two first, that's the overbreath claim and the vagueness claim, and then turn to the equal protection issues or any other issues that the Court would like me to address. The overbreath claim was fatally flawed for two reasons. First, the District Court never found both real and substantial overbreath, as the Supreme Court has instructed. The Supreme Court has specifically said that substantiality has to be vigorously enforced to prevent the invalidation of laws that prevent certain harms in the context of this adult entertainment context. The overbreath was neither real nor substantial. Reality requires that the claimant show from the text of the law and from actual fact the impermissible applications that the District Court is concerned about. However, here, for 20 years, the language that he enjoined has been on the statutes. The language, as far as the scope of 2690 subsection E, has not changed in the time frame that it's been on the statute, but there have been no specific real-world applications of that statute outside the strip club or adult entertainment context. The second element of... Counsel, had that, had the statute been subject to such a claim before, had any court held it was or was not overbroad? No, it wasn't, but it was simply because there was no prosecution under the statute. Oh, I'm asking, was there any litigation about it prior to now? No. There was litigation about the statute in the state courts, but not on an overbreath claim. And the one case... I'm sorry, Judge Kline. Go ahead. Answer the question. The one case that did deal with an application of the statute, the Larson case from 1995, was a strip club case. State court, federal court? State court. Are people under 21 allowed in these places where alcohol is served? I thought they were always supposed to be checking IDs. They are allowed to be on the premises. They are not allowed to drink alcohol in the club. So they are not... So teenagers can come in and watch the show? No, I don't believe, well, 18, 19, and 20-year-olds can, but those under 18 cannot be on the premises at all. But under 21, it's all right? It's okay that they be present, but they... Not served alcohol. Not served alcohol. That's correct. And not serving alcohol, of course. The second failure of the district court's analysis on the substantiality requirement, not only did he fail to show that the overbreath was real, but also that it was substantial. This requires substantiality in both an absolute sense and in a relative sense. First on the absolute side of the analysis, there are five conditions that have to be for one of these hypothetical, perceived, inappropriate applications of the statute. First you'd have to have a liquor licensee. Number two, that would not be an adult entertainment establishment. Number three, that would have highbrow artistic theatrical productions. Number four, that would have to have nudity involved in those productions. And number five, that nudity would have to be done by 18 to 20-year-olds. That's an infinitesimal portion of the potential applications of the statute, of which no such applications were identified in the district court. The Supreme Court's cases from Stevens to the New York State Club Association case show that just some overbreath or envisioning some impermissible application of the statute is insufficient for facial invalidation. Rather in those cases, the court has to consider the social costs that are occasioned by the overbreath doctrine and have to engage in case-by-case adjudication to allow those applications to play out. The second significant failure of the district court's analysis was he refused to address or rely upon the commissioner's affidavit. He gave two reasons for this, both of which are flawed. One is he said, well, Ms. Lombard is not always going to be the commissioner. There's no support in the federal case law anywhere for such a disregarding of an enforcement agency head's affidavit in this context. That would eviscerate the Supreme Court's rule that federal courts, when evaluating state statutes, consider any narrowing construction that the agency has proffered. The second reason he gave for ignoring the affidavit was it's not the role of a federal court to look at an agency's interpretation of its statute. And that, of course, is just plain error. That's a legal error. Under Ward v. Rock v. Racism, in this court's case, Baby Dolls v. City of Dallas, it was the duty of the courts to look at any narrowing construction that may be placed upon the statute. In Baby Dolls, of course, it was the city attorney who said, we have an established history of not applying the sexually oriented business regulation outside the adult entertainment context. He also said, this is the interpretation that I gave to the statute. And failure to consider that affidavit in this context and to rely upon it is an affront to principles of both comedy and federalism and also is especially inappropriate in a case like this where conduct in a bar is at issue, and the Supreme Court has said, rarely if ever would an overbred claim prevail against something that's not a pure speech issue but rather a live conduct issue. Counselor, the RVA side of the Serafine case, a quite recent opinion, more so at the time you wrote in his, what do you make of that decision? Completely distinguishable. In fact, it's the opposite of this case. In Serafine, you had a regulation of pure speech, which was the practice of psychology. You had a broad interpretation by the agency head that an impermissible application of the statute that led to the case that got here to this court. And in that case, the agency head testified at trial that he didn't know whether weight watchers or golf lessons would fall within the statute prohibiting the practice of psychology by somebody who wasn't licensed. So in this case, we have the opposite. We have pure conduct, which is new conduct in a bar. Number two, we have a narrowing construction, not a broad interpretation by the agency head. And therefore, there was no reason for the district court to rely on Serafine. It's a distinguishable case, but Judge Smith certainly seemed to be casting some aspersion on the whole idea of limiting. But the case law is there. Yeah, and of course, if it does violence to the statute, the limiting construction doesn't have to be accepted. But in this case, he literally said, I think the Fifth Circuit would have reached the same conclusion here, but it was a significantly different case and one that cuts in our favor, we believe. The second claim is the vagueness claim, and I'd like to address that next. For 20 years, the language entertainers whose breasts or buttocks are exposed to view has been part of the statute. It's never been found to be vague. There's never been alleged confusion about the application of the statute. Certainly the terms breasts and buttocks are not vague. The Dodgers bar and grill case, the Janais versus Willis case in the adult entertainment context uphold that. And more importantly, the prohibition is not against being an entertainer whose breasts and buttocks are exposed. It's against being that person under the age of 21, which is an objective standard, and or not on a stage that's 18 inches above the floor or at least three feet from the nearest patron. The opposing counsel show both some Louisiana statutes, if I recall correctly, as well as from other locations that have been more specific. What we're dealing with or defining what it means not to have that exposed at all, the suggestion that bikinis might be sufficient, well, what, bikinis come in a lot of different exposure levels. And in enforcement action, a woman, an 18, 19, 20-year-old, what seems to me doesn't have much guidance on how much can be exposed, so I'm concerned about this aspect of your case. It does seem to me some statutes define it better, say everything below a certain level on the breasts and maybe some other way to define what else has to be covered. Isn't this completely without any definition of what has to be covered? No, Your Honor. Because there's a fair amount that is exposed in everyday life by people that would be considered part of the breasts and maybe even part of the buttocks. So how is an entertainer whose business is probably to go as far as possible in exposure, how is she to know? Well, Your Honor, in two ways. If you look at the statute as a whole, what opposing counsel is bringing up is 2690B1. Those are the regulations applicable to shot girls, and it specifically says here's the attire that shot girls have to wear, you can't expose these particular things. And then in subsection D is the prohibition on total nudity and actual sexual touching and things like that. D3 is the prohibition, basically the pasties and g-string requirement that the Supreme Court has upheld time and time again. At the beginning of this section, 2690E, it says, subject to the restrictions of subsection D, in other words, you still can't be totally nude, you still have to have the pasties and g-strings, entertainers whose breasts and buttocks are exposed to view shall be on a stage and shall be 21. So the presupposition is not that this is targeting individual acts of nudity, but it's saying, that's what D3 does, it's saying those of you that are going to have your breasts and buttocks exposed will comply with the stage and age requirements. That's an objective standard, and this is just like the Gamow v. City of Le Havre case where the Ninth Circuit said, well, even if there's some ambiguity in the definition of adult cabaret dancer, it's not unlawful to be an adult cabaret dancer, only to be one within two feet of a patron. Your Honor, as far as how much would be covered, throughout the briefing below, the State took the position that a bikini, a normal bikini that would cover the buttocks and would cover the breasts would satisfy the statute. Do you consider that to have the same weight in this case as the Commissioner's limiting instruction, limiting definition? Yes, Your Honor, it would, because the State's taking... I haven't argued it that way, it seems to me, in the briefing, that this is the equivalent of what the Commissioner said on over-breasts. Well, part of the problem was the theory of, well, the vagueness claim, actually, Your Honor, on the covering, that came... and said it's only applied in adult entertainment venues. That's correct. You haven't argued that in the same way for the bikini argument. Well, this is... If I understand your question correctly, the bikini covering would take you outside the class of entertainers whose breasts or buttocks are exposed. And we know that the term buttocks is defined, and that's not unconstitutionally vague. The term breasts is not unconstitutionally vague, and as long as those are covered, then they can be... then they're outside the scope of that definition. The operative problem is covered. I mean, covered by what? You say normal bikinis. Well, there are lots of different size women who would wear bikinis differently, depending on their weight. That's correct, Your Honor, but whatever size the woman, she would have to cover her breasts and her buttocks. All of them? Your Honor, that would take her outside the statute. There's no confusion in the vagueness context about how to be outside the statute to cover the butt cheeks and to cover the front area and to cover the breasts. And in this case... Totally or partially? What's that? Totally or partially. How's a woman going to know what size to buy? Well, I think whatever size would be appropriate to cover. And I think if they cover it completely, Your Honor... Cover? You're not defining cover. Cover totally? Cover a little bit? A little pasty cover or a bikini top cover? Your Honor, the language in the statute is really exposed to view, and it presupposes that entertainers whose breasts and buttocks are exposed to view shall comply or shall be on the stage and be aged. And here's the point on that. There's an objective standard. All these women... There was no confusion as to these women. These women all testified, I used to be erotic entertainers, but as of the date of the act, I couldn't do that, so I became a shot girl. Parker v. Levy says, one whose conduct is clearly covered by a statute cannot successfully challenge it as void for vagueness. In other words, if they want to talk about the hypothetical new person that comes in, that may be one thing, but these entertainers profess no confusion about the application of the statute of their conduct because they were under 21 when they filed the complaint, and therefore they knew... How old are they now? One of them undoubtedly is 21. The other two are basically 19 and 20. No one's mooted out. One is mooted out. No one is mooted out. That's correct, Your Honor. But this is a particularly important case to follow Young v. American Mini Theatres. This is a case from the Supreme Court of the United States where the two adult theaters said, well, we don't know how much of a film must be dedicated to sex acts and nudity before the film can be said to be characterized by an emphasis on sex acts and nudity. And the Supreme Court said, we refuse to consider either the vagueness claim or the third party standing claim, the over-breath in the abstract, because whatever confusion might exist, these two theaters proposed to offer adult fare on a regular basis, just like these dancers in this case were erotic entertainers probably wearing Pacys and a G-string on a daily basis. But in a facial challenge, they said the facial challenge was inappropriate for four reasons. Number one, they said the regular practice of these clubs is to offer adult fare. Number two, they said that in most cases, the answer would be readily answerable. The answer would be readily apparent because the film would show enough nudity to be characterized by an emphasis. In this case, if they're dancing in the normal dancer attire, which would be Pacys and a G-string, they're going to be showing their buttocks and their breasts, minus the nipples and the other parts, and that would be readily apparent. And then finally, Your Honor, a narrowing construction is available, and the bikini construction is very reasonable. And then finally, the Court said that there is a less vital interest in protecting this type of speech. And of course, there they were dealing with films. They were at least talking about actual speech. And in this case, it's a conduct case where it's particularly appropriate to adjudicate any vagueness claims, which I mind you, and I'll remind the Court, have not come up in the 20 years of this language's existence in the statute. It's appropriate to do case-by-case adjudication. I also was asking you earlier, sort of being injected again, it seems to me that the offering of the idea of a bikini, it certainly is not in the over-breath context, but is the idea that the commissioner or someone can have the same effect on a vagueness challenge as it can on an over-breath challenge by offering a reasonable definition? Absolutely. Absolutely. Case law to support that. Yes. Because there's no need, if in 20 years of the statute's existence they've never applied it to some case that's potentially at the border, the commissioner can take the position, as she did in the District Court, that a bikini would avoid the statute. Dancers can dance in these clubs in a bikini, or they can also dance in non-alcohol clubs totally nude. And then number three, it's not targeting the message because those over the age of 21 can dance as they always have. So for those reasons, we think the vagueness claim was erroneously adjudicated by the district. Chief's permission, I got a yes or no answer question, I think. Do you need to succeed both on the vagueness and over-breath issues to have the injunction set aside? Yes, Your Honor. I believe we have to prevail on both of those, and I think we did. The injunction would not be changed in any way if you went on one but not on the other. If we went on the over-breath claim but not prevail on the vagueness claim, then apparently the statute would still be enjoined. And it's not just Act Number 395, it's the statute as it's existed for 20 years, because those claims, both of those claims really go not to the objective 21-year-old age requirement, but to the pre-existing language. All right. Thank you. Gray Bill. Good morning, Your Honors. May it please the Court, Jeremy Grable for the Jane Doe Plaintiffs. Judge Southwick, I think if I may, I'll start with the question that you ended with, with counsel. The overtime question. What's that? The overtime question. That's right. I think there's pretty clear authority in this circuit that this court's job is not to rewrite state statutes. Many of the cases that the government cites are federal cases interpreting federal statutes. That's a different situation. This is a federal court reviewing a state statute. I'm not aware of any state court that has construed the language we're talking about today. And Judge Southwick, Your Honor, issued an opinion just a few years ago in a service employee's case, where you said that we take the state and local regulations as we have been given them, all right? Taking a step back, you also asked about whether the ATC or the Attorney General can argue in a legal brief, in the context of this litigation, that the statute's not vague. Because breasts or buttocks exposed to view means just wear a bikini. That's not in Commissioner Lombard's affidavit. That's not part of her proposed limiting construction. Her limiting construction is focused on the overbreadth issue. I think that is a critical distinction. When does this bikini concept, concept's probably the wrong way, the idea that that resolves anything, when did that get put into the case? The bikini issue? After we filed the lawsuit. Before we raised it. The defendants. Right. So, if you go back to the legislative. I mean, there's not been any kind of pronouncements on this. I don't know what kind of notices that this particular commissioner might put out. But there's not been any suggestion, anything promulgated by the commission until this litigation that a bikini would resolve the matter. That's my understanding. In fact, if you look at the legislative debate, it's pretty clear that the legislature thought this was a complete ban. They didn't want under 21 year old women in strip clubs. And in fact, before the law became, before the law was enforced, Commissioner Lombard herself was espousing that interpretation of the law. This is an increase in the minimum age of who can be a dancer in a strip club. And there's a news article in the record that quotes Ms. Lombard on that. It's page 89 of the record. This is a week after the law takes effect. So, our point on vagueness, and I think the district court appreciated this, is that the ATC itself has adopted different interpretations. Before we filed the lawsuit, this was a total ban. She was going around telling clubs, get your under 21 year old women out of these clubs. Now we get into the litigation. We raise significant First Amendment, equal protection, other issues. And the fact that the statute has never been challenged doesn't insulate it from attack, obviously. Then they- It's a good thing to have the commissioner making whatever pronouncements she wants. But seriously, looking at the face of the statute, it is not a total ban on women under a certain age or between certain ages from being in strip clubs. It limits what they can do inside the strip clubs. So, is there really a change in any relevant way when the statute says what it says? You take statutes as you find them, or is it regulations? I can't remember the quote you gave me, but the law as we find it. And the law says what it says. Well, as you know, the vagueness doctrine, and more generally the First Amendment, protects us, the people, from the government. We've heard a lot in the briefing about the state wanting to protect these women. The First Amendment protects us from the government. And the vagueness doctrine requires the government to give us fair notice of what is prohibited. And Judge Clement, your question just went right at this issue. We don't know what this law means. Initially, everyone was saying it means one thing. Now, people are saying you need a bikini. What kind of bikini? The statute has to provide fair notice. And again, it's not this court's job to rewrite the statute. There's a case that we referenced from the Fourth Circuit that talked about why that's the case. Because that would lead to legislatures passing the broadest, most, I guess, legislatures potentially being lazy and relying on the court to come in after the fact and fix it for them. That's not anything that I think the federal court should be encouraging state legislatures to do. I'm not asking you to concede anything, but the over-breath determination by the district judge does seem to be weak. How would you say, in fact, that a limiting instruction announced by the commissioner in a way that it seems to me is perfectly acceptable on the case law. And if you're talking about performances of hair at, I'm trying to think of some theater here in New Orleans. I'm drawing a blank right now with shows I haven't been examining. Thank you. Thank you very much for saying the very thing I was trying to think of. And ballet dances. That's a very isolated part of what we're dealing with. Is it fair to say this is an over-broad statute? Well, again, I think the first point is the posture of the case. I won't push for a yes or no. No, that's fine. That's fine. Keep going. I think at this stage of the litigation, the finding is legitimate. The district court is evaluating on a preliminary injunction whether we have a likelihood of success on that issue. So this is very, again, very different from a lot of the cases that have been cited, either summary judgment cases or after trial. So the district court is making a preliminary finding, which is not going to be binding on him, by the way, when we go back and fully litigate this matter. He can change his mind on some of this stuff. He's making a prediction. So he looks at the statute. Again, this regulation is in the general alcohol code. Unlike Texas, we don't have a specific sexually oriented business code in Louisiana. So this law applies to any alcohol licensed establishment. And there are probably thousands, if not tens of thousands of them in the state. Most people talk about theater and ballet. There are any number of other potential applications. Anyone with an art museum, all sorts of things. And the district court didn't do a whole lot of analysis, but he suggested that he had little doubt that this law swept up a substantial amount of a protected speech. The Supreme Court in Stevens, I think this is an important case, there's some confusion in the law about these limiting constructions. The Supreme Court in Stevens in 2008 said that the court should not uphold a statute merely because the government promises to use it responsibly. Again, the First Amendment protects us from the government. The court went so far as to say the mere need to propose a limiting instruction is an implicit admission that the statute is overbroad. Why do we need her limiting instruction if it's clear that it won't be applied outside of the sexually oriented business context? Well, the limiting instruction may keep it from sweeping in any legitimate activity as opposed to less than a substantial amount. So there's certainly a reason for limiting instructions outside of mooting a substantial overbreadth argument. This is, again, this is an easy fix, you know, not to tell the legislature what to do, but there are case law, there's cases- They wouldn't listen. They wouldn't. But there are cases that talk about these mainstream exceptions. There are a number of states that, and again, this is discussed in the Legend Nightclub case out of the Fourth Circuit. There, they were analyzing a Maryland law. There was no mainstream exception, and it was held to be overbroad. The court compared that to a prior case the Fourth Circuit had discussed, a North Carolina law, that did have this mainstream exception. So these limited constructions that they're asking the court to adopt for them, legislatures have written them into statutes like this. It's part of constitutional law. There's nothing exotic that the state is asking for here to recognize a limiting instruction to a statute, and there's plenty of case law where we do that. Again, mostly when you're interpreting federal law. It's a different story, I think, when you're asked to interpret a state law. There are potential eerie problems with that, and again, I think that, I don't think it's as accepted. I mean, I would point you to the Stevens case. Again, the courts are very hesitant to adopt these limited constructions when they're not based on the text of the statute. I'm sorry? Three named plaintiffs here, and as was alluded to earlier, one may be mooted out by age, et cetera. I'm a little curious. Is the statute, from your standpoint, aimed at the French Quarter, New Orleans, or broader than that in terms of similar types of clubs that could be statewide? I understand it's a state statute, but when I went to law school, we learned the law. ABC, accept New Orleans. So that's just kind of the way it was. Also, I ask it, not being facetiously, but what's the narrow kind of honey in, though it's a state statute, but it was an aim of the statute specifically at clubs or small district within the French Quarter, and in the back of that, in my mind is, okay, potentially I would see all these business owners or people potentially affected who run the clubs, screaming that this is vague, I don't know what it means, boom-da-boom-da-boom, but apparently not there. It's sort of three individuals, so it did make me stand back to say, okay, it's not a class action, this is not the business owners, this is not the people potentially whose revenue would be affected. I can't sell alcohol, boom, boom, boom, sort of none of that. So I'm like asking, okay, it's three individuals. Don't get me wrong, I'm not suggesting that that minimizes whatever vitality the claim is, but it just wasn't lost on me. That given this impact, this ain't that this whole arena of clubs in New Orleans, etc. Is it deemed vague and afraid by those who, to me, arguably would be more affected than an individual employee, because they've got to run the cycle of who we hire. You understand what I'm saying? I do, Your Honor. Or is it because this is just the preliminary stages, as you've argued? Well, I think the clubs may not be plaintiffs in this case, but I think the clubs likely share the dancers' views on this, and it's possible that if- Standing in the wings, waiting to see what happens. Well, unlike a lot of the adult regulations that have been challenged in the past, those have generally been zoning-type regulations. You can't be topless if you want to be within 500 feet of a school, for example. So that doesn't actually prohibit the individual expression. It's more of a time or a manner restriction. So here, the statute is directed at the dancers. If you run, and again, you go back and you watch the legislative debate, which we put into the district court record. It's very brief. It's about 25 minutes. Frankly, there's more joking around than there is serious debate. And the one representative who stood up to raise some of these First Amendment concerns, he was mocked off the floor by his colleagues who were throwing dollar bills at him while he's trying to talk about vagueness and overbreadth and freedom of expression. So- Well, you mentioned that the statute is found in the portion dealing with alcohol and beverage regulations and such, which ostensibly would cover the businesses as opposed to the individual. Right. So, to your point just then, so assuming some violation, whatever it might be of it, there is not within either something the commissioner said or otherwise any kind of, almost said exposure, any kind of culpability to the owner who employed the person who's engaged in violations. I see what you're asking, Judge. You know what I'm saying? I believe the statute says that the licensee is sort of responsible for enforcing the provision. And again, this court has recognized that the businesses themselves do have standing to raise these sorts of expression claims. It just seems to us that the plaintiffs, the dancers themselves, they are the ones who have had their freedom of expression restricted. Yeah, well I'm not inferring that the wrong people are here, just given they say it's within the alcohol statute, which obviously regulates all those who have these establishments. And this aim is, quote, not to a question earlier, people can be below 21 and be in there, but it's just you can't sell them the alcohol. So that's the mission. Okay, well you, and I take you off the point, but. Counsel, let me ask you, there are claims beyond over-breath and vagueness that you raised, if the judge didn't get to them, to what extent is it necessary for us to address those? It depends what we do with the first two? Well, yeah, we briefed the First Amendment issue pretty extensively to this court because the district court also addressed that. And we think that the district court, frankly, applied an incorrect analysis there. I'm not sure that he took full heed of your Honor, Judge Clement's opinion in the illusions case, which is a clear statement of the law sort of traces the history on what a state has to show to justify this sort of restriction on expression. For example, the district court gave an awful lot of credit to the state's post-enactment evidence, things like, you can't make this stuff up, things like the regulation is justified because 18 to 20-year-olds have lesser-developed brains. That was not mentioned in the legislative debate. It's an argument that the state has put forward in the litigation. They've put in two declarations from doctors on that theory. I mean, the same adults who can vote for these legislators or lead a platoon into battle in Iraq and they can't make decisions about how to protect themselves. So my point is that I think if the court, the court doesn't have to address the First Amendment. Obviously, if it affirms the district court on vagueness or overbreadth, the injunction stands, the matter proceeds to the next stage, which would be a full adjudication of the claims. But given the posture, we thought that there could be some value in the court giving the district court some guidance on the First Amendment because his analysis on that issue, again, seemed to not take account of illusions. We're interested in the remainder that he did not, unless I just overlooked it, didn't consider it at all, the equal protection argument. It seems to me that would be some novel law if we maybe got to that without enlightenment from the district court first dealing with it. I would tend to agree. I mean, the court has the ability to affirm on alternative grounds and we think this injunction should be affirmed on the basis that on the two grounds the district court put forward. But again, if the court were to disagree with the district court's finding on vagueness and overbreadth, it could address these other claims in the first instance. But as a jurisprudential matter, it may be more appropriate to remand to the district court to allow it to address those claims since he didn't address them in the opinion. I had a few points on the First Amendment. I can go that way. I don't know that I have much else on vagueness and overbreadth. You have a few points in your brief on that. Yeah. Maybe I'll just rest on. I'd be happy to do that. The court doesn't have any more questions. All right. Thank you, sir. Thank you. Thank you, Mr. Berghoff. If I could return just momentarily to the vagueness issue. This is a pre-enforcement challenge. This is where all the rules and the cautions from the Supreme Court in invalidating the state law kick in. It's kind of unique in the sense that they're claiming that there's going to be this vagueness about the phrase entertainer whose breasts or buttocks are covered. And I understand the court has some concerns about that. But the law's been on the books for 20 years. And there's never been a suggestion that people didn't know how to comply with that or who would be covered by the statute. And that shows that the risk of impermissible applications or chilling of speech is particularly not well-founded. We cited two cases that I think were helpful in our brief at page 47 and at page 8 of our reply brief. And the first one is Dodgers Bar and Grill versus Johnson County. This is a Tenth Circuit case where the court said, plaintiffs also assert the ordinance language prohibiting displaying of buttocks fails to specify at what point an individual's buttocks is displayed and is thus too vague to give notice of what is prohibited. Although the ordinance does not define buttocks, we believe the common understanding of the term supplies a clear enough standard by which one could avoid the prohibition. And we will not strike down legislation as vague when a court could quote extrapolate the ordinance's allowable meaning, end quote. And they're citing Janius versus Willits, which is the Eleventh Circuit case that we cited that dealt with the same issue. And they're also citing Greenhead versus City of Rockford. Well, with knowing the questions, I mean, why is it so difficult to be more specific, even assuming you're right in the abstract? I mean, why is this a struggle over I don't have to and you can't make me? Well, Your Honor, the idea is they were specific. And this is an a fortiori case compared to the cases we cited in our brief because those prohibited the display of breasts and buttocks. And this statute does not do that. It just says entertainers whose breasts and buttocks are displayed for view have to be on a stage and have to be 21 years old, two very objective requirements. This is why we think it's very much like the Gambo versus City of Le Havre case out of the Ninth Circuit. If I could, I would like, and we think a bikini would cover it. Literally, the difference between this, you know, 90% or 80% of the buttocks and 82%, that's the particular type of case that in a facial pre-enforcement challenge to a statute should be left to case by case adjudication. And in fact, in the Genia's case cited by the 11th Circuit had, the 11th Circuit said, we think the Florida Supreme Court would define buttocks this way. But they're certainly not terms, breasts and buttocks. They're just incomprehensible on its face. Remember under City of Cincinnati versus Coates, the standard is not whether there's a normative standard that's somehow difficult to discern sometimes, but rather whether it's so vague that there's really no standard at all. And that's not the case here. Well, you've argued several times this is a 20-year-old statute. What's on the record about the enforcement under this statute? Have there been efforts to enforce and the arguments been made that's unclear as to what's involved? I mean, it's one thing to say it's been sitting there. It's something else to be saying it's been utilized and people understood what it meant. Well, the only case that is reported that we know of is Larson versus State. And that's where someone was doing total nudity in the Foxy Lady Strip Club in another parish in the state of Louisiana. And the application was clear. And that's really what Young versus American Mini Theaters says. For the most part, the application is going to be readily answerable. In the normal case, we're going to know exactly where the statute is. If someone wants to bring a test case with a certain amount of covering, they're certainly able to do that. But in a pre-enforcement facial challenge, where a narrowing construction could be applied, and here the state's taking the position that a bikini would cover it, the interstitial gaps in a conduct case is not an appropriate case for a facial challenge. I was wondering more about the case law is whether there was any evidence of demands being made by the commissioner or however that's done to bars and said, here's how your woman was covered, and that's not good enough. Your Honor, I don't know what article he's referring to. I don't know that that's in the record. I don't know what that was. But no, to my knowledge, the commissioner's affidavit says this just applies to strip clubs in the strip club context, and the state's brief saying that bikinis will avoid the application of the statute is what's in the record. I don't know if that's evidence that everybody knew what it meant that there's not been lawsuits before, unless your agency was going after people. No, I don't think there's any evidence that the agency was going after people. I don't think there's been an enforcement in state court or a citation under this. And Judge Southwick, if I could amend my answer prior to my break, and that is, and you always get the opportunity when you're doing that when you rebuttal, but if you look at, even if you were to reverse on the overbred determination and you had some question about the vagueness, we think the district court erred on that. But if you look at the briefing on the remaining four contexts because of the countervailing secondary effects, evidence, interest that the state has, even if you find a likelihood of success on the merits, that does not merit an injunction, especially when a state is harmed because they cannot enforce their law. Thank you. Counsel, on both sides, the case will be submitted. This concludes the orally argued cases. We stand in recess until 9 AM tomorrow.